UNITED STATES v. LAY FISH CO., Inc., et al.

(District Court, S. D. New York. January 4, 1926.)

No. 1113.

1. Criminal law ☞42—Statutory immunity from prosecution held not to extend to witness merely producing and identifying books of corporation (Act Feb. 25, 1903, § 1 [Comp. St. § 8578]; Act June 30, 1906 [Comp. St. § 8580]).

The immunity provisions of Act Feb. 25, 1903, § 1 (Comp. St. § 8578), and Act June 30, 1906 (Comp. St. § 8580), do not extend to an officer of a corporation who appeared before a grand jury, in obedience to a subpoena duces tecum addressed to the corporation, and merely stated his official position and produced and identified the books and records of the corporation.

2. Criminal law ☞42.

Witness appearing before grand jury, intending to claim immunity under Const. Amend. 5, because of his testimony, should make the claim before testifying.

Criminal prosecution by the United States against the Lay Fish Company, Inc., and others. On demurrer to special pleas in bar by individual defendant, claiming immunity. Demurrer sustained.

Emory R. Buckner, U. S. Atty., of New York City (Alexander B. Royce, William D. Whitney, and Israel B. Oseas, Sp. Asst. U. S. Attys., all of New York City, of counsel), for the United States.

Goldstein & Goldstein, of New York City (Jonah J. Goldstein and Aiken A. Pope, both of New York City, of counsel), for defendants Cohen, Maibach, and Rice.

Rothwell, Harper & Matthews, of New York City (Harold Harper, of New York City, of counsel), for defendants Begloff and Pini.

AUGUSTUS N. HAND, District Judge. An indictment has been found against the Lay Fish Company, Inc., and other corporations, and the defendants Begloff, Cohen, Maibach, Pini, and Rice, for violation of the Sherman Anti-Trust Act (Comp. St. § 8820 et seq.). The individual defendants Begloff, Cohen, Maibach, and Pini appeared before the grand jury, in response to subpoenas duces tecum addressed to the corporations of which they were respectively officers, were sworn, protested against the validity of the subpoenas, stated the office which each held, produced a list of the documents submitted, testified that the books and papers were those of the corporations called for by the subpoenas, and were then excused. No one of them claimed any personal immunity flowing from his appearance. Rice was likewise called before the grand jury in response to a subpoena addressed to himself, was sworn, and gave testimony, but made no claim of immunity.

[1] The foregoing five defendants have filed special pleas in bar, based upon the following immunity provisions in the Act of February 25, 1903 (Comp. St. § 8578): "No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding,

suit, or prosecution under said acts, * * * *" and the amendment of June 30, 1906, to the foregoing act: "Immunity shall extend only to a natural person who, in obedience to a subpœna, gives testimony under oath or produces evidence, documentary or otherwise, under oath." Comp. St. § 8580.

To the pleas in bar the government demurs. I think the pleas of the defendants Begloff, Cohen, Maibach, and Pini are without merit. The corporations had to produce their books and papers in answer to subpœnas (Wilson v. United States, 221 U. S. 361, 31 S. Ct. 538, 55 L. Ed. 771, Ann. Cas. 1912D, 558), and the testimony amounted to no more than an identification of the books by a responsible officer. This was a step in obtaining the production of the books, was ex necessitate rei a matter of corporate record, accessible at least by subpœna to the government, and was no more a subject of personal immunity, because the disclosure might possibly injure the individual officers, than were the contents of the books, because they might have a like effect. Indeed, I can see little difference between testimony of the character given and a production of the books under a subpœna without it. Such production would seem to amount to an admission both by the producing officer and the corporation that the documents were those of the corporation.

Judge Lacombe seems to have taken this view in Heike v. United States, 192 F. 88, 112 C. C. A. 620, when he said of the officer who there produced the books of the American Sugar Refining Company: "He testified, of course, that he was the person to whom the subpœnas were addressed, secretary of the New York corporation, and secretary and treasurer of the New Jersey corporation. That circumstance was well known when the subpœnas were prepared and addressed to him; he held these offices for many years; his official position was matter of record. To interpret the statute as securing immunity to an officer of a company for offenses committed while such officer, merely because he has stated under oath on some prior investigation that he was an officer, seems to us preposterous." This decision was affirmed by the Supreme Court in Heike v. United States, 227 U. S. 131, 33 S. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128.

It is true that the immunity claimed was by reason of testimony before the Interstate Commerce Commission, as to which there was an immunity statute similar to the one under discussion. It is also true that the Supreme

Court held that the evidence elicited before the Commission did not furnish any basis for the criminal prosecution of Heike, yet the discussion of that case in both courts renders it highly improbable that the defendants Begloff, Cohen, Maibach, and Pini obtained immunity by anything set forth in their pleas in bar. Moreover, none of the defendants who have filed pleas in bar claimed immunity when appearing before the grand jury. They might have testified voluntarily, and if they did not, and wished to claim their privilege, they should have said so.

It is true that they would have been obliged to testify anyway, if the government chose to compel them to do this, and was content to have the statutory immunity conferred as an incident to the compulsion. But, as Justice Holmes says, in Heike v. U. S., 227 U. S. at page 142, 33 S. Ct. 227 (57 L. Ed. 450, Ann. Cas. 1914C, 128): "The obvious purpose of the statute is to make evidence available and compulsory that otherwise could not be got. We see no reason for supposing that the act offered a gratuity to crime. It should be construed, so far as its words fairly allow the construction, as coterminous with what otherwise would have been the privilege of the person concerned."

[2] The privilege under the Fifth Amendment against self-incrimination must be insisted upon, and the government thereby informed that the witness is testifying under compulsion, if he seeks immunity in return for his testimony. In other words, the immunity statute is not self-operative, but no broader than the constitutional privilege.

It is said that a defendant may be unfairly misled by such a strict construction of the immunity statute. But ever since the New Haven litigation the law of this district has been, I believe, as I have stated, and any defendant who knew of the Immunity Act was in position to know how it must be applied. It can as justly be argued that the government proceeded with its examination, relying upon the failure to claim privilege, and with no intention of conferring immunity, as that the defendants were put in any false position by testifying as they did. There is the same reason for saying, where there is no immunity statute, that a defendant who ignorantly testifies without insisting upon his privilege should not lose it for failure to observe the letter of the law as there is here.

The interesting opinion of Judge Grubb in U. S. v. Skinner (D. C.) 218 F. 870, followed by Judge Hunt in United States v. Elton (D. C.) 222 F. 428, has settled the law

in this district. The Circuit Court of Appeals of the Fourth Circuit reached the same conclusion in Johnson v. United States, 5 F. (2d) at page 477. See, also, United States v. Lee (D. C.) 290 F. 517. Judge Hutcheson, in United States v. Pardue (D. C.) 294 F. 543, has differed with these views; but the weight of judicial decisions, as well as the authoritative opinion of Professor Wigmore, is to the contrary. Wigmore on Evidence (2d Ed.) § 2282.

For the foregoing reasons, the demurrer to the pleas in bar are sustained.